McBRIDE, Judge.
On August 23, 1954, during the scope and course of his employment as porter for American Bakeries Company, plaintiff, George Gillespie, slipped and fell to the floor in his said employer’s establishment and as a result received certain disabling injuries. Plaintiff filed a suit against American Bakeries Company and its compensation insurance carrier, in solido, in which he claimed the maximum benefits of *105 the Workmen’s Compensation Statute, LSA-R.S. 23:1021 et seq., plus penalties and attorney’s fees, on his claim that the said accident rendered him totally and permanently disabled from doing work of any reasonable character. The suit was dismissed as of nonsuit after a trial on the merits in the lower court, and the plaintiff has appealed the case to us.
The defense is twofold: Defendants contend that plaintiff was not engaged in hazardous duties within the contemplation of the Workmen’s Compensation Statute, and deny that he suffered total and permanent disabilities as a result of the accident or that he is entitled to further compensation.
The trial judge was of the opinion that the nature of the employer’s bttsiness (a power bakery) was hazardous and that plaintiff’s duties were hazardous in part and nonhazardous in part. He held that plaintiff could invoke the benefits of the statute notwithstanding the accident occurred during the performance of nonhazardous duties. There is no necessity to review this question in view of our other conclusions in the case.
After hearing the evidence, the trial judge believed that plaintiff had failed to prove his case by a preponderance of the evidence, but in all fairness to plaintiff the court held the case open for a period of thirty days in order to permit plaintiff, who claimed to have a herniated disc, to secure proof of the existence of such injury by submitting to a myelogram test. The judge left it optional with the plaintiff whether he should undergo the myelogram. Plaintiff declined to permit such test to be made within the stipulated period, and in due course the judgment of dismissal was rendered.
Plaintiff was 65 years of age at the time of the accident; his duties with American Bakeries Company were to clean the plant at times when it was not in operation, to wipe machinery, and to assist in loading and unloading trucks. Plaintiff, from time to time, used an automatic self-operating freight elevator for his convenience. The petition alleges there are several residuals attributable to the accident which render him totally and permanently from performing work of any reasonable character, chief among which is a herniated disc. Plaintiff testified his back hurts and sometimes “it gives away,” that he has various pains in his legs, and that his feet “feel numb.”' Plaintiff insists his complaints stem • from the accident and that he cannot return to work.
Six physicians examined plaintiff and we shall consider their testimony in the order in which they saw plaintiff.
On the day the accident happened plain-, tiff was placed in charge of Dr. Irving Levin, a surgeon, who found that plaintiff had fractured the twelfth rib and had tenderness at the site and in the right flank. Dr. Levin saw plaintiff quite often afterward, his course of treatment consisting of the appliance of an elastic bandage with diathermy and sedation. On September 5, 1954, the plaintiff claimed to be suffering so severely from pain that Dr. Levin arranged for his admittance to the Flint-Goodridge Hospital for further therapy, bed rest and sedation. Gillespie remained at the hospital until September 12, 1954, and then made visits to Dr. Levin’s office until December 20, 1954, when he was discharged as being able to return to the duties of his employment.
Plowever, on October 1, 1954, before plaintiff’s discharge, Dr. Levin referred'him to Dr. A. N. Houston, an industrial surgeon, for examination. Dr. Houston examined plaintiff on that date and also on December 7, 1954. He testified that plaintiff’s complaints were pain between the twelfth rib and ilium and in the upper lumbar region which radiated down to his feet which felt numb. Dr. Houston failed to find any pathology and could see no reason for the complaints. Dr. Houston stated that on his first examination he felt that perhaps the *106 patient had not been given sufficient time to recover from symptomatology and that he should be given six or eight weeks more of diathermy treatments in order to recover. However, on his second examination Dr. Houston could find nothing whatever wrong with plaintiff and saw no reason for the complaints of pain, but in order to have his opinion verified by an orthopedist, Dr. Houston recommended that plaintiff be sent to Dr. Soboloff for examination.
Plaintiff did see Dr. Hyman Soboloff, an orthopedic surgeon, who made his examination on December 10, 1954, with the aid of X-rays. Dr. Soboloff’s opinion was that there were no residual orthopedic findings. He noticed, however, a narrowing between certain vertebrae and also some arthrosis, this latter condition being ascribed to plaintiff’s advanced age. Dr. Soboloff found tenderness over the L-5 vertebra area which he admitted could possibly be caused from a herniated disc. He recommended a neurosurgical opinion.
The next physician to see plaintiff was Dr. Howard Karr, a neurosurgeon. This doctor examined plaintiff on December 17, 1954, and his opinion was there were no abnormalities existing in plaintiff’s back, and there was absolutely no reason why he could not work.
On August 15, 1955, plaintiff was examined by Dr. George C. Battalora, an orthopedic specialist, who appeared in the case as plaintiff’s only medical expert. According to Dr. Battalora, the plaintiff, who walked with the aid of a cane, complained that he suffered pain in the low back region which descended down the right buttock and right lower extremity which felt numb. Dr. Battalora says he noted the presence of muscle spasm, right dorsal lumbar scoliosis, and narrowing of certain disc spaces, which were suggestive that plaintiff may have a ruptured intervertebral disc. However, Dr. Battalora was fair and frankly stated that all of his findings were not indicative of a disc herniation, and he would he unable to say whether plaintiff had such injury and “would depend on a neurosurgeon’s opinion.” But, Dr. Battalora stated that even if plaintiff had no herniated disc, he was nevertheless unfit to go back to work. Dr. Battalora also found the presence of the osteoarthritic changes Dr. Sobo-loff had alluded to and he, like Dr. Soboloff, attributed these to the patient’s age and said this arthrosis antedated the accident.
The defendants, on September 13, 1955, sent plaintiff to Dr. Richard Levy, a neurosurgeon, for an examination. Dr. Levy examined the patient and studied Dr. Sobo-loff’s X-rays. He saw nothing to suggest nerve root involvement and that there was no ruptured disc. He did notice some muscle spasm which occurs as a result of pain, with tenderness over L-4 and L-5 spinous process in the same region of the narrowed vertebral spaces. He 'felt that plaintiff could return to his job as porter, although he thought plaintiff might experience some pain if he attempted to lift heavy objects, but that he could carry on the duties of janitor or porter.
There is no question that plaintiff suffered a fracture of the twelfth rib, which healed after six to eight weeks, for which period of time he was paid full compensation, and all medical expenses incurred in connection with his treatment were paid for by defendants. In view of the overwhelming weight of medical testimony given by Drs. Levin and Houston, surgeons, Drs. Levy and Karr, neurosurgeons, and Dr. Soboloff, orthopedist, we believe that the lower court decided the case correctly, and in no manner can the judgment be termed to be manifestly erroneous. The only medical evidence that the plaintiff adduced emanated from Dr. George Battalora, orthopedist, who readily admitted that the case for a disc herniation was not clear-cut and that although plaintiff had some signs indicative of a ruptured disc, other demonstrative signs were lacking. In narrating Dr. Bat-talora’s testimony above, we pointed up the doctor’s statement that he would abide by the findings of a competent neurosurgeon. This statement seems to us to have special significance. No neurosurgical testimony *107 was adduced by the plaintiff, whereas the defendants offered the testimony of both Drs. Karr and Levy, who are specialists in this field, and their testimony is completely adverse to the plaintiff’s contentions.
It is true that Drs. Battalora and Levy noted the presence of muscle spasm in plaintiff’s back and these physicians and Dr. Soboloff also said that there was some tenderness in the area of L-4 and L-5 spinous process, but there is nothing in the medical testimony that can be construed as connecting these symptoms with the trauma of August 23, 1954. Sight cannot be lost of the fact that plaintiff is an elderly man and that his spine shows evidence of the degenerative process known as arthrosis, and while none of the doctors said so, it would not be unreasonable to suppose that this degenerative condition caused the trauma and the pain. Dr. Battalora stated that he did not think the plaintiff could return to his work, but he never did say that the inability to work was the result of trauma; in fact, Dr. Battalora was not asked any questions along that line. For us to say that the muscle spasm and tenderness were caused by the accident would require that we delve into the realm of conjecture, which we do not think we should do. A claimant for workmen’s compensation bears the same burden of proving his case by a preponderance of the evidence to the same extent as the plaintiff in any other type of case. The plaintiff here has fallen far short of making the necessary proof to be successful in a recovery of compensation. It is not shown that whatever disability he has resulted from the accident of August 23, 1954. The trial judge gave him the opportunity, if he chose, of submitting himself to the myelogram test in order to show if a herniated disc was present, but the plaintiff, for reasons known to himself, did not see fit to have the test performed.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.