REGAN, Judge.
William V. Seal, a carpenter, instituted this suit against his employer, Lionel F. Fa-vret Company, Inc. and its compensation insurer, American Employers’ Insurance Company, endeavoring to recover the sum of $35 per week for 400 weeks, subject to a credit of $449.17, for total and permanent disability resulting from a ruptured inter-vertebral disc incurred when a pile of lumber on which plaintiff was standing shifted as he was attempting to lift an angle iron causing planitiff to fall and injure his back. Plaintiff also requested the imposition of penalties and attorney’s fees for capricious or arbitrary refusal to pay further compensation to him.
Defendants answered and admitted the occurrence of the accident but asserted that plaintiff had fully recovered from the effects thereof and therefore he was not entitled to any additional compensation.
From a judgment in favor of plaintiff and against defendants awarding compensation at the rate of $35 per week for 400 weeks, subject to a credit of $449.17, and for $225 for plaintiff’s expert fees, the defendants have prosecuted this appeal.
Plaintiff has answered the appeal and requested that the judgment of the lower court be amended to include penalties and attorney’s fees for arbitrary refusal to pay compensation.
The record reveals that on July 1, 1957, at about 11:30 A.M. plaintiff was working for Lionel F. Favret Company, Inc., as a carpenter in connection with the construction of the Monteleone Hotel garage when he fell and injured his back as he attempted to pick up a piece of lintel iron[1] from the ground and hand it to the men working about eight feet above him. The iron subsequently fell across his chest while he was lying almost supine.[2]
Immediately after the accident occurred his brother, Venson Seal, a fellow employee, assisted him in getting up, and he then complained of a burning sensation in his back. He continued to work until 12 o’clock when he reported the accident to O’Niell, the foreman, and then returned to his home in a taxicab.
On the following day, he visited his employer’s office which referred him to Drs. Houston, Roy, and Faust, industrial surgeons for the defendant insurer. Dr. Faust examined him on the morning of July 3 and thereafter was of the opinion that the plaintiff had incurred a lumbar and lumbo sacral joint strain. He prescribed the use of heat, rest on a hard bed, and codeine.
Since the plaintiff had failed to make progress as an office patient, he was placed in Touro Infirmary on July 24, 1957, by Dr. Sam Houston, who prescribed bed rest and bi-lateral leg traction with 5 pound weights attached to each leg and physiotherapy treatment. He was discharged from the hospital on August 3, 1957.
On September 16, 1957, plaintiff was requested to visit the offices of Dr. H. R. So-boloff, orthopedic specialist retained by the defendant insurer. He found a little ar-throsis low in the back and a good deal of it high up in the thoracic spine, but “no residuals of this injury and * * * felt he should be given a trial on returning to work.” On September 20, 1957, Dr. Houston discharged the plaintiff as being fit to return to his former occupation.[3]
On the same day he visited the site of the Monteleone garage and requested carpen *833 try work and was told by the superintendent of construction that he was preparing to discharge rather than hire men.
Thereafter on September 23, 1957, he secured work as a carpenter from a Mr. Johnson, which he was unable to perform due to pain in his back.
On September 26, because of recurring pain, he returned to the offices of Dr. Houston who referred him to Dr. Gilbert Tom-skey, a urologist, who after an examination concluded that the plaintiff was also suffering from chronic prostatitis. However, Dr. Tomskey cautiously emphasized that he did not believe that the sole cause of the back pain was due to this condition but that his examination was confined entirely to his specialty as a urologist.
Plaintiff then visited his own physician, Dr. Vernon Kroll, a general surgeon, on September 26, 1957. He found muscle spasm in the lower back, tenderness upon pressure, and that the motion in plaintiff’s back was limited; and in view of the nature of the accident and the source of the pain, he strongly suspected a ruptured in-tervertebral disc. He suggested that plaintiff visit a neuro-surgeon.
He was examined by Dr. Homer D. Kir-gis, a neuro-surgeon of Ochsner Clinic, on three separate occasions, namely, October 17, December 9, 1957, and May 17, 1958, who in the final analysis expressed the opinion that the plaintiff “had sustained a rather severe compression of the fifth lumbar nerve of the left, with herniation of the fourth lumbar intervertebral disc” and that a myelogram test was unnecessary to confirm his conclusion since the patient’s history and his clinical findings were typical of that syndrome. He believed that the herniation of the fourth lumbar intervertebral disc was due to the injury which the plaintiff sustained on July 1, 1957, and that the plaintiff was disabled from performing the work of a carpenter.
In view of the foregoing diagnosis of Dr. Kirgis, plaintiff was referred to Dr. George Battalora, an orthopedist, by the defendant insurer. He testified that he 'examined plaintiff on February 7, 1958, and that his findings were indicative of low lumbar disc herniation, but he suggested that the plaintiff be given the benefit of a myelogram; and if it showed a definite herniation, he would then recommend surgery.
Plaintiff was then referred on May 15, 1958, by the defendant insurer, to Dr. Richard Corales, a neuro-surgeon, who after an examination concluded that plaintiff’s condition was suggestive of nerve root involvement, which as we understand it was indicative of low lumbar disc herniation. He asserted that no myelogram test was made because plaintiff refused to submit thereto since he was afraid of a spinal puncture and that with the benefit of such a test he would be more apt to make an accurate diagnosis.
Plaintiff was then referred on May 19, 1958, by defendant insurer to Dr. Robyn Hardy, a radiologist, who after taking X rays of plaintiff’s back, found osteoarthritic changes within the lumbar spine at both hip joints, but he did not notice anything in his X-ray studies to indicate an intervertebral disc condition.
' The foregoing elucidation reveals that only a question of fact was posed for the trial court’s consideration. The judge thereof was obviously of the opinion, predicated on the medical testimony, that the plaintiff had incurred a herniated disc as a result of the accident.
The question which this appeal has posed for our consideration is whether that finding is so erroneous or unsupported by the evidence as to warrant a reversal by us. We are of the opinion that no useful purpose would be served by indulging in a protracted dissection of the foregoing medical testimony or by endeavoring to reconcile or re-evaluate it. We believe, as the trial judge did, that the medical evidence preponderates in favor of plaintiff and that *834 he did, as a result of the accident, incur a disc herniation. This conclusion is supported by the testimony of defendants’ Drs. Battalora and Corales. However, for the sake of even more certainty, they recommended that plaintiff submit to a myelo-. gram test, which plaintiff’s Dr. Kirgis on the other hand thought was unnecessary for the reason set forth hereinabove.
Ordinarily, we would unhesitatingly terminate this opinion by invoking the accepted doctrine that the conclusions of the trial court will not be disturbed when questions of ■ fact are exclusively encompassed by the judgment unless clearly erroneous. However, defendants’ counsel points to what he considers error by the trial court in concluding from the medical evidence that the plaintiff had incurred a ruptured intervertebral disc as a result of this accident since he failed or refused to submit to a confirmatory myelogram test and that therefore this fact militated against the medical evidence preponderating to the effect that he had suffered a ruptured inter-vertebral disc inasmuch as plaintiff’s back pain may have been caused by the osteoarthritis or prostatitis. He cites in support thereof the relatively recent case decided by this court of Gillespie v. American Bakeries Company,[4] the rationale of which he asserts is, in effect, that plaintiff must submit to such a test when the medical testimony is conflicting relative to the existence of a ruptured intervertebral disc resulting from the accident. In that case we simply agreed with the trial judge in his findings that the medical evidence did not preponderate to the effect that plaintiff had incurred a herniated disc but that in order to offer more evidence thereof the plaintiff cojild voluntarily submit to a myelogram test and the following extract therefrom serves to emphasize this reasoning:
“After hearing the evidence, the trial judge believed that plaintiff had failed to prove his case by a preponderance of the evidence, but in all fairness to plaintiff the court held the case open for a period of thirty days in order to permit plaintiff, who claimed to have a herniated disc, to secure proof of the existence of such injury by submitting to a myelogram test. The judge left it optional with the 'plaintiff whether he should undergo the myelogram. Plaintiff declined to permit such test to be made within the stipulated period, and in due course the judgment of dismissal was rendered.”
However in this case, as we have related hereinabove, the medical evidence convinces us that the plaintiff incurred a herniated disc as a result of the accident, and therefore additional proof thereof was unnecessary.[5]
The penalties and attorney’s fees[6] requested by plaintiff should not be imposed upon the defendant insurer since there was nothing capricious or arbitrary in its refusal to pay plaintiff compensation after September 28, 1957, nor was the withholding thereof without probable cause. The evidence reveals that the compensation insurer acted upon the advice of several competent physicians each of whom sincerely believed that the plaintiff as of the above date was fully able to return to his former occupation.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. The lintel iron was L-shaped, 22 feet long, and weighed 250 pounds.

. The occurrence of the accident is conceded; therefore it is unnecessary to describe it in detail.

.Plaintiff was paid compensation through September 28, 1957.

. La.App.1958, 98 So.2d 104, 105.

.. It is well settled that a claimant for workmen’s compensation must successfully bear the same burden of proving . his case by a preponderance of the evidence as the plaintiff in any other civil proceedings; however, a civil case, generally, does not have to be proven beyond a reasonable doubt. The only exception that we are cognizant of is discussed in Green v. City of New Orleans, La. App.1956, 88 So.2d 76.

. LSA-R.S. 22:658.