GLADNEY, Judge.
The plaintiff, C. Monroe Smiley, has appealed from a judgment which denied his demand for workmen’s compensation presented in a suit brought against W. L. Chandler, La Salle Timber Company, Inc., and Olin Mathieson Chemical Corporation. The main issues for determination concern whether or not the employee was injured on the job, and if so, the extent and nature of disability.
Plaintiff alleges he was an employee of W. L. .Chandler, a pulpwood contractor for La Salle Timber Company, Inc., and Olin Mathieson Chemical Corporation when, on May 10 and May 13, 1957, he was struck by falling limbs on two occasions while engaged in performing the duties of his employment. The first occurrence took place when a dead limb approximately three and one-half inches in diameter fell and struck Smiley across the back, and the second happened when a limb the size of his arm fell and struck him on the head. His job was that of a trimmer or sawyer’s helper and he worked with his nephew, Lavelle Smiley, who used a power saw for cutting.
Lavelle Smiley testified he saw his unde knocked down by a falling limb on the morning of May 10, 1957, and assisted him to his feet. Later during the day Lavelle Smiley mentioned the occurrence in a joking manner to W. L. Chandler, who appeared on the scene where the work of the two Smileys was continuing. Apparently, plaintiff did not appear to have been injured by the falling limb. Plaintiff did not mention the incident to any of his coworkers, although he had occasion to ride to and from the job with W. E. Higgs and Roy Greene. On May 13th, a few days later, plaintiff told Lavelle Smiley he was struck on the head and momentarily stunned by a falling limb. Lavelle testified he did not see the accident. Monroe Smiley said nothing of this occurrence to Higgs or Greene. Higgs testified, however, Lavelle Smiley told him of the limb falling on May 10th and striking his uncle. After May 13th plaintiff did not return to work and about a •month later gave notice to his employer of a claim for compensation.
Monroe Smiley related that on May 13th he went to see a Dr. Young at Jonesboro, Louisiana, who ascertained that he had 102° of fever and gave him a couple of shots and some tablets; that he again went to see Dr. Young on May 14th, at which time X-rays were made. Thereafter he did not return to Dr. Young’s office. (The record does not otherwise identify Dr. Young.) On May 17th plaintiff saw Dr. Roy D. Martin of Winnfield and in order to receive professional attention he visited that doctor on May 21, May 24, May 30 and June 16, *13 1957. Later plaintiff consulted Dr. W. Sidney Easterling, a general physician on August 21, 1957, Dr. T. A. Dekle, a physician of Jonesboro, on September 9, September 16 and October 11, 1957, January 13, January 27, February 27 and March 1, 1958, and Dr. Heinz K. Faludi, a neuro-surgeon of Shreveport, on October 9, 1957. Smiley said he also called upon Dr. John T. Mosley, of Winnfield on October 15, 1957. In addition to these doctors Smiley stated he was also seen by a Dr. Moore of Shreveport. (Dr. Moore was not otherwise identified.) Dr. Young and Dr. Moore were not summoned as witnesses. Plaintiff’s counsel explained at the trial these doctors could not be located for the purpose of giving testimony in the case.
As pointed out above, the only serious controversy between the litigants relates to the extent and nature of the disability, if any, incurred by the employee as a result of the falling limbs. Although we find plaintiff has established to our satisfaction proof that he was struck by either one or two falling limbs while performing his work, the infliction of an injury therefrom causing disability is unsupported by any substantial evidence to be found in the record.
The allegations of plaintiff’s petition indicate his uncertainty as to the nature and extent of his disability, for he describes his injuries as follows:
“Petitioner’s injuries have had various diagnoses, one probably aggravation-to arthritis of the spine aggravated by the trauma of the limb falling across his back, etc. One as local tenderness on the back area which may be secondary to contusions which he may have had originally, and it is well possible that the second accident that the patient suffered a flexion injury to the neck cervical spine causing a sprain and secondary occipital neuralgic pains. And Psychophysiologic musculo-skele-tal reaction, characterized by back pain and headaches. The patient may have had a back, injury which would cause some symptoms and he may have had arthritic changes as mentioned above; however, the severity of his present disability seems likely to be on an emotional basis.
“And in the event plaintiff’s condition is not from a physical disability at the present time, same should be and is a case of Traumatic Neurosis. Plaintiff realizing his condition to be such that he is not able to work, and not able to rest day or night caused from pain in his back at the junction where said limb hit him and up to the head, and through his upper back, neck and chest.”
Not a single witness testified to seeing any bruises or lacerations on Smiley’s body. The record is barren of objective evidence of injury. Dr. Martin, who treated the employee on May 14th and on a number of occasions thereafter, testified plaintiff did not inform him of being struck by a limb until two weeks after his first professional visitation. The record does reflect, however, that plaintiff had suffered for many years from asthma which affected him to such an extent that on some occasions he was forced to leave his work.
Dr. Faludi testified he made no neurological diagnosis. Dr. Easterling testified he found the plaintiff to be under an emotional strain but could not class this as a traumatic neurosis. Dr. Moseley said he made no examination of the plaintiff and his testimony presented no evidence of disability. Dr. Martin testified plaintiff received treatment for physical troubles unrelated to any employment injury. Dr. Dekle expressed an opinion plaintiff may have sustained an injury on May 10th which could have aggravated an arthritic condition. The doctor presented no X-ray plates and testified he was not acquainted with the condition of plaintiff prior to May 10, 1956.
*14 Counsel for appellant relies principally upon the testimony of Drs. Faludi and Dekle as establishing that the employment accidents caused a pre-existing arthritic condition to be aggravated, a flexion injury to the cervical spine, and traumatic neurosis.
Dr. Dekle, without benefit of X-rays and never having examined Smiley prior to May 10, 1957, expressed the opinion an arthritic condition was aggravated. Manifestly, such conclusion is unsupported by established facts which would demonstrate any change of condition existing prior to the accident. We find this testimony unacceptable as proof of causation of aggravation of complainant’s arthritis.
Dr. Faludi examined Smiley only on one occasion, October 9, 1957, some five months after the alleged accidental injuries. In a report on this examination the doctor opined:
“It is well possible that in the second accident that the patient suffered a flexion injury to the cervical spine causing a sprain and secondary occipital neuralgic pains.”
Surely, such a statement is indicative only of a possibility, and is a far cry from a diagnostic conclusion. This medical evidence standing alone and not otherwise substantiated fails entirely to establish an injury from which disability can be inferred.
Not a single doctor determined Smiley had traumatic neurosis. Dr. Faludi did not even make a neurological examination.
The medical testimony does not support a finding of causal connection between the complaints of the plaintiff relating to his disability and the striking of his body by falling limbs on May 10th and 13th. The remarks of our respected brother of the trial court on this point are appropriate :
“Plaintiff does not allege a specific injury in his petition. Fie uses the words ‘probably’, ‘which may be’, ‘it is well possible’, ‘the patient may have had’, and ‘he may have’. All of these statements indicate at most a possibility and the law is well settled that more than a possibility is required. The plaintiff must prove that he did suffer an accident and that he was injured. The evidence offered by plaintiff did no more than his petition — to indicate a series of possibilities without adequate proof either of an accident or a trauma.”
It has been repeatedly recognized in our jurisprudence that a plaintiff in a workmen’s compensation suit has the burden of establishing his case to a legal certainty, and conjecture, possibility, or even an unsupported probability are not sufficient to sustain recovery. Robbins v. Chicago Mill & Lumber Company, La.App.1954, 76 So.2d 635; Chance v. American Mutual Liability Insurance Company, La.App.1957, 92 So.2d 493; Bailey v. Aetna Casualty & Surety Company, La.App.1957, 94 So.2d 576; Finley v. Hardware Mutual Insurance Company, La.App. 1957, 96 So.2d 238; Keener v. Fidelity & Casualty Company of New York, La.App.1957, 96 So.2d 509; Gillespie v. American Bakeries Company, La.App.1957, 98 So.2d 104; Wyatt v. Consolidated Underwriters, La. App.1957, 98 So.2d 537; Anderson v. Peek, La.App.1958, 102 So.2d 776.
For the foregoing reasons, the judgment from which appealed is affirmed.