JOHNSON, Judge pro tern.
Plaintiff’s petition was filed July 30, 1958, alleging that plaintiff was a laborer in the employ of Favrot Roofing Company; that plaintiff was totally and permanently disabled by an accident on the job on May 2, 1958, and praying for maximum compensation, expenses, penalties and attorney’s fees. The Travelers Insurance Company, employer’s compensation insurance carrier, was made defendant. The answer admitted plaintiff’s employment, but denied that plaintiff was injured in an accident (though there is no serious effort made to disprove that an accident occurred in the course of the plaintiff’s employment). Defendant ad-ments the insurance coverage and, in the alternative, in the event it is held that plaintiff is entitled to any compensation, the defendant resisted the claim for statutory penalties and attorney’s fees, requested that the Court order a myelogram either to confirm or negate the presence of a ruptured disc as the disabling condition and to suspend compensation payments until the mye-logram is performed, then the payments to be resumed only if the myelogram is positive. This request is repeated in this court.
The trial court gave judgment in favor of the plaintiff for workman’s compensation at the rate of $35 per week beginning May 2, 1958 for the period of plaintiff’s disability not to exceed 400 weeks, subject to credit for the amount paid to date of trial, and $70 medical .expense, and further judgment “ * * * in the full sum of $67.-20 as penalties (being 12% of the amount of compensation more than 60 days overdue at the time of payment) and additional penalties of 12% on any further compensation which may become more than 60 days *896 overdue, plus attorney’s fees in the sum of $1,000.00.” Defendant has appealed.
On May 2, 1958, Eugene Johnson, together with two other laborers, was sliding a debris-filled iron drum down three short flights of steps. This 55 gallon drum was moved downward on two boards placed parallel over the steps and its descent was controlled by a workman on each side of the barrel who was supposed to prevent the drum from sliding too fast and going out of control. Johnson who was at the bottom of the stairs, was injured when the drum went out of control, struck him and pinned him against a wall.
Plaintiff told the foreman that “the barrel pinned me and I am hurt”. Later that same day he commenced to have pain and he told his foreman that he needed to go to a doctor. The foreman instructed him to go to the office and get a slip. Instead he went to Charity Hospital that same afternoon and again the next day, but they did not treat or examine him and instructed him to go to his company doctor. He then went to Dr. Paine, who gave him office treatments every day for about a week when his foreman told him he was going to the wrong doctor. The foreman sent him to Dr. Houston, who reported that because the plaintiff was doing well as the result of Dr. Paine’s treatment, he should go back to work. Thereafter at different times he was examined by four medical experts, three of whom are eminent neuro-surgeons. The plaintiff testified that he always worked as a laborer; that he never had any difficulty with his back prior to this accident; that he has pain in the back and leg, some days worse than others and that he cannot stoop over.
Inasmuch as the defendant denies that plaintiff is disabled and particularly denies any liability for penalties and attorney’s fees under the law, it is pertinent to recite the sequence of medical examinations and reports which were available to the defendant. In addition to the report of Dr. Houston of May 14, that the plaintiff was able to work, Dr. Fisher, a general surgeon for the plaintiff, examined the plaintiff six times between May 19 and June 26, 1958. This doctor made one report on May 21 which was received by defendant’s adjustor. Another report was sent to defendant from Dr. Fisher on June 13, 1958.
Dr. Dean Echols, for the plaintiff, examined the plaintiff on July 16, 1958 and his detailed report was sent to the defendant on July 25th. Dr. Echols reported in writing and testified at the trial in part as follows :
“This man’s story is completely convincing, and he gives an accurate description of the symptoms usually produced by rupture of the lumbosacral in-tervertebral disc. Furthermore, the physical findings fit in with a diagnosis of ruptured lumbosacral disc on the left side. When standing undressed, the lumbar curvature is somewhat flattened and the paravertebral muscles are prominent. There is tenderness at the lumbosacral junction and just to the left of this region. He repeatedly tends to stand with slight flexion of the left hip and left knee. When he does put the weight equally on both lower extremities on request, there is a slight list of the lumbar spine to the left. The patient is able to bend forward only 20 degrees without getting back pain. He performs side bending better but experiences the same back pain. He is unable to tolerate hyper-extension of the spine. With the patient supine the straight leg raising test on the left gives popliteal pain at 40 degrees above the horizontal. The same test on the other side gives back pain only, and at 70 degrees. Pin point sensibility is diminished on the lateral aspect of the left calf. The knee jerks are diminished but equal. The ankle jerks are not obtained in the usual manner, but with the patient kneeling and with reinforcement- the left ankle *897 jerk is obtained not at all and the right ankle jerk is obtained faintly. The rest of the examination including the eye-grounds, cranial nerves, etc., discloses no abnormality.
“My diagnosis is rupture of a lumbar intervertebral disc, probably of L-5— S-l.”
Dr. Corales for the plaintiff examined the plaintiff on July 30, and his report was sent to the defendant on August 19, 1958.
Dr. Levy, for the defendant, examined plaintiff on August 1 and November 12, 1958.
All of these medical experts, except Dr. Houston, found this plaintiff, in their opinions, to be totally disabled to do heavy labor and Dr. Fisher, Dr. Corales and Dr. Levy agree substantially with the findings and diagnosis of Dr. Echols.
In mid-August, according to John Settle, a Travelers claim man, his company instructed him to attempt to negotiate a compromise in the form of a lump sum settlement, but the insurer did not start the compensation payments.
On November 6, 1958, the defendant paid the plaintiff compensation dating back to the injury and since that time has paid plaintiff $35 per week.
The preponderance of the evidence clearly establishes that this plaintiff was totally disabled at the time of the trial. The only other questions this appeal poses for our consideration are whether the defendant is entitled to require that the plaintiff submit to a myelogram to confirm that his disability stems from a ruptured interverte-bral disc as he alleges, and whether the defendant was arbitrary and capricious in delaying payment of compensation until November 6, 1958.
It is an established principle of law that a compensation claimant need not specifically identify and classify the injury he has sustained to recover compensation benefits. He must prove disability and show that it is a result of an injury arising out of and in the course of his employment. The test is disability vel non and not the nature of the injury. Bassemier v. W. S. Young Construction Co., La.App.1959, 110 So.2d 766; Patton v. Argonaut Underwriters Ins. Co., La.App.1959, 110 So.2d 142; Johnson v. Atlantic & Gulf Stevedores, Inc., La.App.1958, 102 So.2d 518; and numerous authorities cited in these three cases on the point. In this case plaintiff has established that he was injured during the course of his employment, and that the medical experts who testified all agree that the plaintiff is totally disabled, either asserting that plaintiff has a ruptured disc or that their findings indicate the strong possibility of a disc. The only doctor to pronounce Eugene Johnson fit for heavy labor after the accident was Dr. Houston on May 12, 1958, and he was not called as a witness. Despite this overwhelming proof, counsel for the defendant, relying on the doctrine enunciated in Gillespie v. American Bakeries Company, La.App.1957, 98 So.2d 104, contends that the medical opinions should have been confirmed by a myelogram before defendant was obligated to pay any compensation and should be confirmed now before the payments are continued. In this case we cannot agree with that contention.
In the Gillespie case, the trial judge decided that the workman had failed to prove his injury by a preponderance of the evidence and merely offered the plaintiff an opportunity to substantiate his claim of a ruptured disc by submitting to a myelogram or he would enter judgment for the defendant. The plaintiff did not undergo the myelogram and on appeal, this Court affirmed the trial judge’s action. The basic reason for dismissing that plaintiff’s suit by the trial court and for affirming the dismissal in this court was not the failure of the plaintiff to undergo a myelogram after the trial judge held the case open for thirty days after the trial to give the plain *898 tiff the opportunity voluntarily to bolster his claim that he had a ruptured disc. The suit was dismissed and the dismissal was affirmed because the plaintiff failed to prove by a preponderance of the evidence that he was disabled. In Seal v. Lionel F. Favret Co., La.App.1958, 107 So.2d 831, this court held that where the medical evidence conclusively establishes that the plaintiff incurred a herniated disc, then additional 'proof is unnecessary. In that case, as in the one now before us, the defendant urged the court to order the plaintiff to submit to a myelogram under the doctrine of the Gillespie case, despite the fact that there was conclusive medical testimony to establish disability. The evidence now before us proves beyond question that this plaintiff was totally disabled to perform heavy labor at the time of the trial. The question as to whether he suffered a ruptured disc is secondary. The surgeons may desire to see a myelogram in some instances before they operate, though Dr. Echols does not require it in about half his cases. We do not need it to determine disability. Therefore we find no merit in defendant’s contention.
We must next review whether the award of penalties and attorney’s fees should be maintained.
When the defendant received the plaintiff’s first medical report indicating a ruptured intervertebral disc on June 13, 19S8, it also had an industrial surgeon’s report asserting there was no disability. However by August 15, when the defendant received a report from its own doctor, a neuro-surgeon, indicating that this plaintiff was disabled and there was a strong possibility of a ruptured disc, it still did not place the plaintiff on compensation until more than sixty days after this date. In the meantime defendant had before it the positive opinion and diagnosis of Dr. Echols and the report of Dr. Fisher. In view of this, the trial judge reasonably concluded that the defendant acted arbitrarily and assessed the penalty and attorney’s fees prescribed by law.
For these reasons the judgment appealed from is affirmed.
Affirmed.
REGAN, J., absent.