McBRIDE, Judge.
Plaintiff, aged 47, a repairer of chicken coops, who earned $40 per week, met with an accident during the course and scope of his employment, which accident he claims has rendered him totally and permanently disabled from doing work of any reasonable character. He brought this suit against the employer and its compensation insurer, claiming compensation at the rate of $35 per week for 400 weeks. The defense set forth in the answer is a denial of an injury to the back, and that from and after May 28, 1958, the date he was given his discharge by the treating physician, plaintiff was not disabled but was capable of returning to his work. After a trial, plaintiff recovered judgment for compensation at the rate of $26 per week for 400 weeks (subject to a credit of $204.-27, representing compensation paid to him to May 28, 1958), plus $236 for medical expenses; plaintiff’s three medical expert witnesses were allowed $100 each as their expert’s fee. Defendants have appealed.
On April 8, 1958, while operating an electrically-driven handsaw, the thumb on plaintiff’s left hand contacted the saw blade and some soft tissue was cut away, and as a result of instinctively recoiling from the saw, plaintiff fell, striking his lower back on a scale.
On the same day he was taken to the office of Dr. Dan Baker, general surgeon, who sutured the wound and rendered treatment for a period of about seven weeks, during which time plaintiff made twenty-three visits to the doctor’s office. On May 28, 1958, Dr. Baker, being of the opinion plaintiff had recovered, discharged him as being able to return to his usual employment. However, plaintiff continued to make complaints of pain in the thumb and Dr. Baker saw him again on July 17, 1958. Dr. Baker’s opinion was that the thumb was normal and that plaintiff could do his work. Dr. O. L. Pollingue examined plaintiff June 23, 1958, and found an eight percent loss of the use of plain *495 tiff’s left hand. Dr. James L. LeNoir examined plaintiff’s thumb on March 17, 1959, and found no disability in the member. Dr. Hyman Soboloff, orthopedic surgeon, saw plaintiff on September 11, 1959, and said the thumb was “negative.” We do not believe the injury to the thumb caused any disability beyond the date Dr. Baker discharged plaintiff and there is no loss of use of the hand.
Plaintiff also claims that when he struck the scale he sustained an injury to his back which causes him to suffer constant pain both in the back and in the right leg which persisted to the date of trial.
All medical experts on both sides agree that plaintiff has spondylolisthesis of the fifth lumbar interspace which is a congenital condition and means there is a slipping forward or backward of the vertebra at that point. Such condition varies in degree, plaintiff’s condition being characterized as of the first degree, or minimal. The column that normally supports the spine is missing on either side. There is no void or vacuum at the site of the spondylolisthesis, the adjoining vertebrae being held together by soft tissue instead of bone, and this condition constitutes a structural weakness of the spine at the point.
We are called upon to determine whether this congenital condition was aggravated by the accident. Plaintiff’s contention is that because of the painful condition existing in his back and right leg, he has been, since the accident, totally and permanently disabled from doing the work required of him by his occupation or any work of any reasonable character. Some contention is made as to whether plaintiff actually fell and struck his back on the scale. A fellow worker appears as witness for the defense and states positively that plaintiff did not fall. We believe there was such a fall as plaintiff describes.
As stated before, Dr. Baker (who was called as a witness by both sides) treated plaintiff for the injured thumb to May 28, 1958. Plaintiff states he did not begin to suffer from pain in the back until eight or ten days after the accident, and it is certain he did not complain to Dr. Baker, who was then treating him for the injury to the thumb, of back pain until April 21, 1958, or thirteen days after the accident. X-rays made by Dr. Baker showed no pathology; however, for some reason or other the X-rays did not cover the lower part of the spine and do not even show the spondylolis-thesis which everyone seems to agree was there. So Dr. Baker’s statement he could discern no pathology in the back cannot be given serious consideration.
After being discharged by Dr. Baker, plaintiff made an effort to return to his usual occupation and worked for his old employer about three weeks at somewhat lighter work, but he claims he had to quit because of the constant back pain he endured. He then went to work as a watchman, which job was more or less of a sedentary nature, and he remained in this line of work for about one year and then quit because he was given an assignment which required much walking and the climbing of a levee. Later on he went to work in a rope factory, but after only one night’s work he quit, and this employer’s doctor gave him a letter certifying him as physically unfit for the job. Plaintiff claims he never had any trouble with his back before the accident, but he has had constant pain in the back, right leg, and thumb since the injuries.
Although plaintiff professes his pains were constant, after being discharged by Dr. Baker on May 28, 1958, he sought no medical advice at all until November 20, 1958 (about seven months after the accident), when he called upon Dr. John A. Colclough, a neurological surgeon, who examined him on December 9, 1958, but who never treated him. On November 11, 1959 (about one year later), Dr. Colclough, with the assistance of Dr. George Willis, radiologist, made a myelogram which confirmed Dr. Colclough’s initial diagnosis there is a herniation of the fifth lumbar intervertebral *496 disc which causes sciatic pain on the right side with minimal spondylolisthesis. Dr. Willis agreed there was a “filling defect, without classifying it further * * *.” Dr. Colclough thought plaintiff totally incapable of returning to his former occupation, but, of course, he could not say whether there was causal connection between plaintiff’s condition and the accident, and we believe this is due to the remoteness of the examinations to the date of the accident. All Dr. Colclough would say was that spondylolisthesis could be aggravated by trauma. Dr. Willis thought that the defect in plaintiff’s back could have been caused by “a pathological process or by trauma.”
Dr. Pollingue, appearing for plaintiff, stated his examinations in June and October 1958 revealed a first degree spon-dylolisthesis with marked narrowing of the fifth interspace. He recommended that plaintiff consult a neurosurgeon.
Several physicians examined plaintiff on behalf of defendants, viz., Dr. LeNoir (March 1959), Dr. Corales (March 1959) and Dr. Soboloff (September 1959) ; they all noticed the spondylolisthesis, but were certain there was no ruptured disc. Dr. Le-Noir stated that spondylolisthesis could cause pain in the legs. Dr. Corales could not say whether the spondylolisthesis had been aggravated, but recommended that plaintiff place himself in charge of an orthopedic consultant for conservative treatment. Dr. Soboloff’s opinion was that the spondylolisthesis was not aggravated by trauma. He stated that if plaintiff had back pains, such might be caused by degenerative changes, meaning arthrosis. He thought plaintiff could return to work.
Dr. Charles M. Nice, Jr., radiologist, appearing for defendants, viewed Dr. Col-clough’s X-rays in the courtroom on the trial, and stated that he saw the spondy-lolisthesis but no ruptured disc. He did notice a defect at the interspace between the fifth lumbar and the first sacral vertebrae which he thought might have been caused by the injection of the needle during the myelographic test.
Dr. Pollingue, plaintiff’s own witness, and Dr. LeNoir, for defendants, are in agreement that upon the aggravation of a pre-existing spondylolisthesis the patient would experience pain which would follow “promptly” after injury because of the tearing of the soft parts that hold the spondylolisthesis. Dr. Pollingue, in giving such opinion, stated that the pain experienced would have been “excruciating” and his thought was that plaintiff would not have waited thirteen days before telling his doctor about it.
Three of defendants’ experts, namely, Drs. LeNoir, Corales and Soboloff, each said they had never seen a patient with a ruptured disc at the site of a spondylolis-thesis.
It is an established principle of law that a compensation claimant need not specifically identify or classify the injury he had sustained in order to be successful in a recovery of compensation. The test of the right to recover is disability vel non, and not the nature of the injury. The onus is upon the workman to prove the disability and to show it is the result of an injury arising out of and in the course of the employment. Johnson v. Travelers Insurance Company, La.App., 116 So.2d 894.
Defendants vigorously contend that plaintiff has failed to establish his claim with legal certainty in that he has not shown a causal connection between the disability and an occupational injury. We agree that plaintiff’s right to compensation must stand or fall on such showing vel non.
It is too well settled to require the citation of authorities that a plaintiff in a suit for workmen’s compensation is required to make out his case by a preponderance of the evidence and with the same degree of legal certainty as is required in any other civil case. Speculation, conjecture, near possibility, or unsupported *497 probabilities are not sufficient to support a judgment.
It is most unfortunate that Dr. Baker’s X-rays, made thirteen days after the accident, did not show the lower part of plaintiff’s back. If these X-rays had shown the portion of the spine about the fifth lumbar vertebra, they might have given a clue as to whether the accident caused an aggravation of the spondylolisthesis. X-rays of the lower back were not made until more than seven months after plaintiff’s fall against the scale, and it was then too late for Dr. Colclough, who made the pictures, to say whether the accident was the cause of the defects he found. All Drs. Colclough and Pollingue could say was that trauma could aggravate pre-existing spondylolisthesis. No doctor could or would say that the specific accident of April 8, 1958, which was the only one shown by plaintiff, caused the disability he complains of.
Plaintiff himself admits he did not experience the pain until eight or ten days after the accident, and the evidence is positive that he made no complaints of pain to Dr. Baker, under whose treatment he was for the lacerated thumb, until thirteen days after his fall. According to the testimony of Dr. Pollingue, who was called to the witness stand on behalf of plaintiff, if the spondylolisthesis had been aggravated because of the accident, plaintiff would have experienced immediate excruciating pain because it would have meant that the ligaments holding the vertebrae together were torn, and he would not have waited thirteen days to tell his doctor about the pain. Dr. LeNoir, who testified for defendants, agreed, and his statement was that the pain would follow “promptly” after the injury. Such testimony is absolutely uncontradict-ed, and in view of what the two doctors say it would be difficult to believe that the accident which plaintiff experienced was the cause of any aggravation to his preexisting defective spine. We cannot lose sight of the fact that Dr. Pollingue pointed out that “it doesn’t take much to hurt a back. Just a good cough or sneeze or bending forward * * * can hurt a back, and especially one that has a spondylolisthesis.” Also pertinent is the statement of Dr. Le-Noir that spondylolisthesis can cause pain in the legs and that the condition can be aggravated by bending, coughing, sneezing or even in walking.
It may be perfectly true that plaintiff had never suffered from his back at any time prior to the accident. However, no one could reasonably be certain that it was the accident that caused the disability of which he now complains. In view of the fact that plaintiff did not suffer pain until eight or ten days after the accident and only complained to his doctor thirteen days afterward, we cannot speculate and say that the accident is the cause of the pain or of his disability in view of what Drs. Pollingue and LeNoir had to say with reference to the time when the pain accompanying an aggravation to a spondylo-listhesis should manifest itself. Por all we know other causes intervening after the accident might well be the cause of plaintiff’s present plight. Were we to hold that plaintiff’s disability arose from the accident, would mean that we would indulge in unadulterated conjecture. We must agree with defendants that plaintiff’s case has not been made certain, that is to say, by a preponderance of the evidence. He has not shown that disability flowed from the accident. Each workmen’s compensation case is to be individualized by its own facts, and in view of what the record herein discloses, we feel that the judgment appealed from cannot stand.
Therefore, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that plaintiff’s suit be dismissed, and he is cast for the costs of both courts.
Reversed.