HALL, Judge.
Plaintiff prosecutes this appeal from a judgment denying his claim for workmen’s compensation benefits and dismissing his suit brought against his former employer, United Engineers & Contractors Inc. (United Engineers Construction Company, Inc.).
Plaintiff’s claim is for 400 weeks compensation at the rate of $35.00 per week for total and permanent disability, for medical benefits in the sum of $2,500.00, and for statutory penalties and attorney’s fees. Defendant has paid no compensation to him.
The issues are whether plaintiff was disabled, and if so, whether the refusal to pay compensation benefits was arbitrary, capricious or without probable cause.
Plaintiff’s claim is based on an accident which occurred on September 11, 1963 while in the employ of defendant as a pipefitter.
There were no eye-witnesses to the accident but it is clear from the record that about 10:45 A.M. on September 11, 1963 while plaintiff was knocking a cíete off a piece of pipe the hammer slipped and struck him on the outside of the left knee. He reported immediately for first aid where it was found that he had a “possible contusion to left knee. Small abrasion to left knee.” The abrasion was cleaned, antiseptic was applied and the abrasion was covered with a band-aid. He was told to return to first aid if he had any further discomfort in the knee and plaintiff left the first aid station and returned to his work. He lost no time from work and continued in defendant’s employ until sometime in the latter part of October or first part of November when his employer’s contract was completed. Plaintiff thereupon obtained employment with Crawford & Russell, another contractor, doing the same type of work at the same rate of pay. He worked for them for several months without incident, although he complained at the trial that he was working in pain.
On November 6, 1963 while working for Crawford & Russell plaintiff reported to the first aid nurse who had attended him on September 11 complaining of pain in his left knee. This was the first time he had made any complaint since the date of the accident. The nurse arranged for him to see Dr. Wade Sigmon, Jr., a general practitioner.
Dr. Sigmon examined plaintiff on November 12, 1963 and saw him thereafter on November 19 and November 26 on which latter date Dr. Sigmon referred him to Dr. Santo J. LoCoco, an orthopedic surgeon who examined him on November 29, 1963.
Dr. Sigmon testified that plaintiff complained of tenderness over the upper-outer pole of the left patella and of pain and a click in the left knee. X-rays taken were negative for bony pathology or fractures. Dr. Sigmon testified that there was no objective evidence whatever of any injury to plaintiff’s knee and that he found no click but that his impression based on what plaintiff told him was that plaintiff had a bruise of the left knee and a possible meniscus tear. He stated that he did not conclude that plaintiff had a meniscus tear; that he could not say positively nor with any de *152 gree of certainty that he had a meniscus tear, but that that was an impression which he could not rule out so he referred him to' Dr. LoCoco.
Dr. LoCoco found the patient walking with a limp, favoring the left leg. X-rays taken by him were negative for bony pathology. He detected a click in the knee and some crepitation but “no true history of locking.” Dr. LoCoco also found a one-inch atrophy of the quadriceps muscle of the left thigh. His diagnosis was a “probable” torn lateral meniscus of the knee joint or possibly a chondromalacia of the lateral aspect of the patella, and explained that the latter is a degeneration of the cartilage on the inside of the patella which can be caused by trauma or simply by age (plaintiff was 53) or hard work. Dr. LoCoco said the only way to tell whether plaintiff had either a torn meniscus or a chondro-malacia was to perform an exploratory arthrotomy on the knee-joint which he recommended. He said that without such an operation it was “anybody’s guess” what was wrong but thought that there were enough objective physical findings to warrant his diagnosis. The operation was never performed and Dr. LoCoco saw plaintiff only the one time.
From the history given him by plaintiff and Dr. Sigmon, Dr. LoCoco attributed plaintiff’s condition to the accident of September 11, 1963. He did not know that plaintiff had had a prior accident as hereafter noted. He further testified that plaintiff was unable with a torn meniscus to do the work of a pipefitter which he understood to entail climbing, walking on uneven surfaces, and squatting.
Plaintiff continued to work as a pipefitter for Crawford & Russell until February or March 1964 when he left that firm to work for the Dupont Corporation as a pipefitter. As a matter of fact plaintiff never lost any time from work as a result of the accident of September 11, 1963. His wages with Dupont were even higher .than the wages paid him by either defendant or Crawford & Russell.
Plaintiff had had a previous accident while working for H. E. Weise Construction Company on December 14, 1961 when he fell from the cab of a truck. He filed suit against his employer’s compensation insurer alleging that he “sustained a severe lumbosacral strain with a possible herniated intervertebral lumbar disc and an rtmbilical hernia, as well as an arthritic condition.” Plaintiff was paid $2,500.00 in settlement of this claim. Parenthetically it is interesting to note that on May 16, 1963 plaintiff had had another accident while working for E. N. Wolcott Corporation. This accident involved his wrists and he was paid $3,000.-00 in settlement of his claim. Also noted is the fact that on April 28, 1964 (subsequent to the accident complained of in these proceedings) plaintiff had another accident while working for the Dupont Corporation. This accident involved an injury to his right knee. ■
Dr. Dabney Ewin, a general surgeon, testified that he examined plaintiff on August 31, 1962 in connection with plaintiff’s accident of December 14, 1961. Dr. Ewin referred to his report of that examination and testified that plaintiff “also says pain runs down both buttocks and thighs laterally, and he can’t climb because his legs ‘just give out on me and it hurts so badly I can’t hardly go on’.” Dr. Ewin stated that in the course of his examination he found nothing wrong with plaintiff’s left knee nor did he note any atrophy in the left thigh. That accident involved the back and right knee principally.
Dr. H. R. Soboloff, an orthopedist, testified that he examined plaintiff on April 28, 1964 in connection with the injury to plaintiff’s right knee resulting from the accident on the Dupont Corporation job. He stated that plaintiff made no mention to him of having had .any previous trouble with the left knee.
*153 Dr. Irvin S. Cahen, an orthopedist, examined plaintiff on May 26, 1964 in connection with the alleged injury in question here. He stated that his definite opinion was that plaintiff had sustained a contusion of his knee-joint above the patella, to the outer and top side. He disagreed with Dr. LoCoco’s diagnosis of a probable meniscus tear, and after reviewing the written reports of Dr. Sigmon and D,r. LoCoco stated:
“A. These medical reports to which you have referred unfortunately indicate a statement by physicians which state the man had a bruise of the left knee and then state a possible meniscus tear. Now none of these forms have any information as to which meniscus or what part of the knee; in other words these doctors have a diagnosis but there are no signs; they don’t make the diagnosis specific, so this type of information does not help me in my further evaluation of this individual.”
Dr. Cahen was unable to get a true comparison of the measurements of the left and right thighs because the right leg had been in a cast from the accident of April 28, 1964 but stated in his report that they were apparently equal in circumference bilaterally. He found no crepitus in the left knee.
All medical experts agree that a person with a torn meniscus should not be allowed to climb, walk on uneven surfaces, or squat for long periods of time. The question is did plaintiff have a torn meniscus? Dr. LoCoco admits that all of plaintiff’s symptoms as observed by him could have resulted from previous accidents, particularly an injury to his back, or from age or from hard work, and that he attributed his condition to the accident of September 11, 1963 because plaintiff told him he “was well before he hit his knee with the hammer.”
When plaintiff hit his knee on September 11, 1963 he was working at . a pipe raGk or bench on the ground. There is no testimony, even by plaintiff himself, that his employment by defendant ever necessitated him doing anything other than ground work. He testified that after this accident he had to be put on light duty working at a bench both with Crawford & Russell and with the Dupont Corporation, but the fact is he was doing the same kind of work on these jobs as he was doing in defendant’s employ, except that he admitted he did some climbing at Dupont. The fact is that his accident of April 28, 1964 while working for Dupont was occasioned by a fall from a ladder.
It is interesting to note that Louis Guil-lotte, a fellow employee and safety proctor at Dupont, testified that the pipefitter’s union has a policy of taking care of older men and that a man of plaintiff’s age (53) would not be required to climb as long as there were men of 28, 29 or 30 available in the crew. However this statement was contradicted by Clovis Ulan another fellow employee. Both of them were witnesses for plaintiff.
Plaintiff was still working for Dupont, drawing pipefitter’s wages, at the time of the trial.
The Trial Court gave no reasons for denying compensation in this case but he must have concluded that plaintiff failed to prove his claim.
Plaintiff in a workmen’s compensation case bears the burden of proving his claim by a preponderance of the evidence with the same legal certainty as is required in any other civil case. See Guillory v. New Amsterdam Casualty Company, La.App., 141 So.2d 493; Ernest v. Tac Amusement Company, La.App., 163 So.2d 818; Carter v. Casualty Reciprocal Exchange, La.App., 163 So.2d 855.
Plaintiff in our .opinion has not borne the burden of proving that he cannot perform without substantial pain the same type of work he was employed to do when *154 injured, and if, as he testified, he has difficulty in climbing he has not shown with any degree of legal certainty that his difficulty is referable to the accident complained of rather than to a pre-existing arthritic condition, pre-existing difficulty with climbing, a possible pre-existing inter-vertebral lumbar disc condition or his age.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by appellant. See LSA-C.C.P. art. 5188; Coulon v. Anthony Hamlin, Inc., 233 La. 798, 98 So.2d 193.
Affirmed.